UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN  DIVISION
———

DERRICK LEE SMITH,

                           Plaintiff,                          Case No. 1:15-cv-82

v.                                                              Honorable Janet T. Neff

BONITA HOFFNER et al.,

                           Defendants.

_____/

### OPINION

      This is a civil rights action brought by a state prisoner pursuant to 42 U.S.C. § 1983. The Court has granted Plaintiff leave to proceed *in forma pauperis*.  Under the Prison Litigation Reform Act (PLRA), PUB. L. NO. 104-134, 110 STAT. 1321 (1996), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief.  28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c).  The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible.  *Denton v. Hernandez*, 504 U.S. 25, 33 (1992).  For the reasons set forth below, the Court will dismiss Plaintiff's complaint, except for the retaliation claims against Defendants Heyns, Hoffner and Beckwith set forth in Claims ##15 and 16.

## Factual Allegations

Plaintiff currently is incarcerated in the Kinross Correctional Facility, but his *pro se* complaint concerns events that occurred at various Michigan Department of Corrections (MDOC) facilities where Plaintiff has been incarcerated. Plaintiff's eighty-page amended complaint (ECF No. 32) includes twenty-four enumerated claims against twenty-four named Defendants and several unknown parties. Plaintiff sues the MDOC; MDOC Director Heidi Washington and former MDOC Director Daniel Heyns; B.L. Beasley, MDOC Supervisor of Central Time & Computation Unit; the "Dog Program" and Unknown Party named as "MDOC's Dog Program Eligibility Criteria"; Unknown Party named as "Michigan Sentencing Scheme"; and Unknown Party named as "Director, Prison Legal Writer Training Program." Plaintiff also names the following officials at the Lakeland Correctional Facility: Warden Bonita Hoffner; Deputy Warden Linda Beckwith; Corrections Officers (Unknown) Borst, (Unknown) Weers, (Unknown) Dekeyser, (Unknown) Friend; and Assistant Resident Unit Supervisor (ARUS) Donald Winsley. Plaintiff sues the following officials from the E.C. Brooks Correctional Facility: Warden Mary Berghuis, Grievance Coordinator (Unknown) Minnerick and Classifications Director Mario Vialapando. From the Alger Correctional Facility, Plaintiff sues Warden Catherine Bauman and Classifications Director (Unknown) Hoffman. Plaintiff also names Michigan Reformatory Warden Carmen Palmer. In addition, Plaintiff names Wayne County Clerk Cathy Garrette, Wayne County Prosecutor Kim Worthy, Wayne County Circuit Court Judge Daniel P. Ryan, Mail Call Entertainment, Unknown Parties named as "Mail Call Entertainment Staff & Employees," In Pen Pals, Unknown Parties named as "In Pen Pals Staff & Employees," Girls and Mags, Inc. and Unknown Parties named as "Girls and Mags Staff & Employees."

Claims ##1-3 concern Plaintiff's placement on "Potential Aggressor Status." Plaintiff alleges that Defendants Heyns, Berghuis, Hoffner, Bauman, Beckwith and Winsley violated his due process rights by placing him on "Potential Aggressor Status" without providing notice and a hearing. Plaintiff contends that his status as a potential aggressor has negatively impacted programming, housing and classification decisions. Plaintiff further alleges in Claim #2 that his equal protection rights were violated when Defendants imposed a "Potential Aggressor" designation upon him without providing a valid justification, when other prisoners were provided with a valid reason for their designation as an "Aggressor," "Potential Aggressor," "Victim" or "Potential Victim." In Claim #3, Plaintiff contends that the "Potential Aggressor" designation violates his Eighth Amendment right against cruel and unusual punishment.

Claims ##4-7 of the amended complaint concern alleged violations of Plaintiff's Eighth Amendment rights. In Claim #4, Plaintiff alleges that Defendants Beckwith, Winsley, Heyns, Berghuis, Vialapando and Bauman subjected him to cruel and unusual punishment when they forced him to carry his own footlockers and duffel bags when he was being transferred to another facility. At the time, Plaintiff allegedly had serious injuries to his hand, wrist and arm as a result of an assault by Officer William Alford. Plaintiff claims that he suffered irreparable injuries after Alford slammed a door on him in 2012.[1] Plaintiff contends that he suffers pain and further injury each time he is forced to carry his heavy bags for transfer. In Claim #5 Plaintiff similarly claims that Defendants Berghuis, Hoffner, Heyns, Winsley, Borst, Beckwith and Bauman forced him to climb to a top bunk despite the injuries inflicted by Defendant Alford. Plaintiff further alleges in Claim #6

---

[1] The alleged assault by Officer Alford is the subject of a previous lawsuit brought by Plaintiff. *See Smith v. Alford*, 1:13-cv-694 (W.D. Mich.). The Court entered judgment in favor of Defendant Alford on October 20, 2015. An appeal in the case remains pending in the Sixth Circuit.

that Defendant Minnerick violated his constitutional rights by refusing to process Plaintiff's grievance regarding his top bunk assignments. Finally, Plaintiff alleges in Claim #7 that Defendant Berghuis failed to respond to his complaints or take action with regard to his placement in top bunks in violation of his Eighth Amendment rights

Plaintiff did not include a Claim #8.

Claims ## 9-10 and 21 concern Plaintiff's criminal conviction and calculation of his sentence. In Claim #9, Plaintiff raises numerous alleged constitutional violations in the criminal proceedings, including the failure to hold a preliminary examination and ineffective assistance of counsel. Plaintiff further alleges in Claim #10 that Defendant Wayne County Clerk Cathy Garrett violated his right of access to the courts by refusing to accept his pleadings for filing in his criminal case. Plaintiff asserts in Claim #21 that he has fully served the sentences for his 1998 convictions, and, thus, is being held on those convictions in violation of his constitutional rights.

In Claims ##11-13, Plaintiff contends that Defendants Mail Call Entertainment, In Pen Pals, Inc., Girls & Mags and their unknown employees committed fraud by advertising and accepting money from him for services that were never provided.

Plaintiff asserts in Claims ##14-15 that Defendants Heyns, Washington, Palmer, Berghuis, Hoffner and Bauman retaliated against him for filing grievances and lawsuits by transferring him to different facilities. Plaintiff claims that each of these Defendants transferred him within weeks or months after he filed a lawsuit against him or her and that there is no other legitimate explanation for the transfers. Plaintiff alleges in Claim #15 that Defendants Heyns and Washington placed him on a list of litigious prisoners who are transferred every five to six months

in order to interfere the prisoner's ability to file and appeal grievances and work on pending litigation.

Claim #16 concerns Plaintiff's inability to participate in the "Dog Program." Plaintiff alleges that Defendants Hoffner, Beckwith and Bauman denied him participation in the program on the ground that he was convicted of criminal sexual conduct. Plaintiff claims that these Defendants denied him admission while allowing other prisoners with more serious violent offenses to participate in the program in violation of his equal protection rights. Plaintiff further alleges that Defendants Hoffner and Beckwith told him that he was denied entry to the program "because [he] filed lawsuits against their fellow staff members." (Amend. Compl., ECF No. 32, PageID.129.)

Plaintiff alleges in Claim #17 that in February 2015, Defendant Hoffner transferred him from the Lakeland Correctional Facility to the Alger Correctional Facility in the Upper Peninsula in retaliation for Plaintiff's filing of grievances and lawsuits.

In Claim #18, Plaintiff contends that Defendants Hoffner, Bauman and Hoffman have denied him employment in the prison library in violation of his Fourteenth Amendment equal protection rights. Plaintiff further alleges in Claim #20, that Defendants Heyns, Verbencouer and Russell violated his Fourteenth Amendment equal protection and due process rights by denying his participation in the legal writer training program.

Plaintiff asserts in Claim #19 that on December 11, 2014, Defendant Winsley threatened to transfer him to the Upper Peninsula, which would prevent Plaintiff's wedding scheduled for February 2014, if Plaintiff did not drop his lawsuit against Defendant Officer Alford. In addition, Plaintiff claims that Winsley falsely accused him of using the telephone while he was serving sanctions on a previous misconduct, which resulted in Plaintiff being placed on telephone

restriction.  Plaintiff contends that Winsley's conduct violation his First, Eighth and Fourteenth Amendment rights.

Plaintiff brings Claims ##22-24 against the MDOC.  In Claim #22, Plaintiff contends that the faulty voice recognition programming used as part of the prisoner telephone system frequently has prevented Plaintiff from making phone calls in violation of his Eighth Amendment rights.  Plaintiff asserts in claim #23 that his personal keyboard was seized as contraband in violation of Department policy governing prisoner personal property.  Finally, Plaintiff alleges in Claim #24 that the MDOC violated his Eighth Amendment rights when it imposed a smoking ban on the general population in February of 2009, and forced him to quit smoking overnight.

Plaintiff seeks declaratory and injunctive relief, as well as monetary damages.

## Discussion

### I.   Misjoinder

Federal Rule of Civil Procedure 20(a) limits the joinder of parties in single lawsuit, whereas Federal Rule of Civil Procedure 18(a) limits the joinder of claims.  Rule 20(a)(2) governs when multiple defendants may be joined in one action:  "[p]ersons . . . may be joined in one action as defendants if:  (A) any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and (B) any question of law or fact common to all defendants will arise in the action."  Rule 18(a) states:  "A party asserting a claim . . . may join, as independent or alternative claims, as many claims as it has against an opposing party."

Courts have recognized that, where multiple parties are named, as in this case, the analysis under Rule 20 precedes that under Rule 18:

> Rule 20 deals solely with joinder of parties and becomes relevant only when there is more than one party on one or both sides of the action.  It is not concerned with joinder of claims, which is governed by Rule 18.  Therefore, in actions involving multiple defendants Rule 20 operates independently of Rule 18. . . .
>
> Despite the broad language of Rule 18(a), plaintiff may join multiple defendants in a single action only if plaintiff asserts at least one claim to relief against each of them that arises out of the same transaction or occurrence and presents questions of law or fact common to all.

7 CHARLES ALLEN WRIGHT, ARTHUR R. MILLER, MARY KAY KANE, FEDERAL PRACTICE & PROCEDURE CIVIL § 1655 (3d ed. 2001), *quoted in Proctor v. Applegate*, 661 F. Supp. 2d 743, 778 (E.D. Mich. 2009), and *Garcia v. Munoz*, No. 08-1648, 2007 WL 2064476, at *3 (D.N.J. May 14, 2008); *see also Neitzke v. Williams*, 490 U.S. 319, 328 (1989) (joinder of defendants is not permitted by Rule 20 unless both commonality and same transaction requirements are satisfied).

Therefore, "a civil plaintiff may not name more than one defendant in his original or amended complaint unless one claim against each additional defendant is transactionally related to the claim against the first defendant and involves a common question of law or fact."  *Proctor*, 661 F. Supp. 2d at 778.  When determining if civil rights claims arise from the same transaction or occurrence, a court may consider a variety of factors, including, "the time period during which the alleged acts occurred; whether the acts . . . are related; whether more than one act . . . is alleged; whether the same supervisors were involved, and whether the defendants were at different geographical locations."  *Id.* (quoting *Nali v. Michigan Dep't of Corrections*, 2007 WL 4465247, *3 (E.D. Mich. December 18, 2007)).

Permitting the improper joinder in a prisoner civil rights action also undermines the purpose of the PLRA, which was to reduce the large number of frivolous prisoner lawsuits that were being filed in the federal courts.  *See Riley v. Kurtz*, 361 F. 3d 906, 917 (6th Cir. 2004).  Under the

PLRA, a prisoner may not commence an action without prepayment of the filing fee in some form. *See* 28 U.S.C. § 1915(b)(1). The PLRA also contains a "three-strikes" provision requiring the collection of the entire filing fee after the dismissal for frivolousness, etc., of three actions or appeals brought by a prisoner proceeding *in forma pauperis*, unless the statutory exception is satisfied. 28 U.S.C. § 1915(g). The "three strikes" provision was also an attempt by Congress to curb frivolous prisoner litigation. *See Wilson v. Yaklich*, 148 F. 3d 596, 603 (6th Cir. 1998). These "new fee provisions of the PLRA were designed to deter frivolous prisoner litigation by making all prisoner litigants feel the deterrent effect created by liability for filing fees." *Williams v. Roberts*, 116 F. 3d 1126, 1127-28 (5th Cir. 1997). Allowing a prisoner to file a complaint against different defendants concerning unrelated occurrences would "'defeat, or at least greatly dilute, the clear intent of the fee payment and three-strikes provisions of the statute.'" *Green v. Callahan*, No. 2:14-cv-11453, 2014 WL 1652335, at *3 (quoting *Walls v. Scott*, 1998 WL 574903, at * 3 (N.D. Tex. Aug.28, 1998)); *see also George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007) ("A buckshot complaint that would be rejected if filed by a free person–say, a suit complaining that A defrauded the plaintiff, B defamed him, C punched him, D failed to pay a debt, and E infringed his copyright, all in different transactions–should be rejected if filed by a prisoner."); *Brown v. Blaine*, 185 F. App'x 166, 168-69 (3d Cir. 2006) (allowing prisoner to assert unrelated claims against new defendants would defeat the purpose of the three-strikes provision of the PLRA); *Patton v. Jefferson Corr. Ctr.*, 136 F.3d 458, 464 (5th Cir. 1998) (discouraging "creative joinder of actions" by prisoners attempting to circumvent the PLRA's three-strikes provision).

Under Rule 21 of the Federal Rules of Civil Procedure, "[m]isjoinder of parties is not a ground for dismissing an action." Instead, Rule 21 provides two remedial options: (1) misjoined

parties may be dropped on such terms as are just; or (2) any claims against misjoined parties may be severed and proceeded with separately.  *See DirecTV, Inc. v. Leto*, 467 F.3d 842, 845 (3d Cir. 2006); *Carney v. Treadeau*, No. 07-cv-83, 2008 WL 485204, at *2 (W.D. Mich. Feb. 19, 2008); *Coal. to Defend Affirmative Action v. Regents of Univ. of Mich.*, 539 F. Supp. 2d 924, 940 (E.D. Mich. 2008); *see also Michaels Bldg. Co. v. Ameritrust Co., N.A.*, 848 F.2d 674, 682 (6th Cir. 1988) ("Parties may be dropped . . . by order of the court . . . of its own initiative at any stage of the action and on such terms as are just.").  "Because a district court's decision to remedy misjoinder by dropping and dismissing a party, rather than severing the relevant claim, may have important and potentially adverse statute-of-limitations consequences, the discretion delegated to the trial judge to dismiss under Rule 21 is restricted to what is 'just.'"  *DirecTV*, 467 F.3d at 845.

At least three judicial circuits have interpreted "on such terms as are just" to mean without "gratuitous harm to the parties."  *Strandlund v. Hawley*, 532 F.3d 741, 745 (8th Cir. 2008) (quoting *Elmore v. Henderson*, 227 F.3d 1009, 1012 (7th Cir. 2000)); *see also DirecTV, Inc.*, 467 F.3d at 845.  Such gratuitous harm exists if the dismissed parties lose the ability to prosecute an otherwise timely claim, such as where the applicable statute of limitations has lapsed, or the dismissal is with prejudice.  *Strandlund*, 532 F.3d at 746; *DirecTV*, 467 F.3d at 846-47; *Michaels Building Co.*, 848 F.2d at 682.

Dismissal of Plaintiff's unrelated claims would not cause gratuitous harm.  State statutes of limitations and tolling principles apply to determine the timeliness of claims asserted under 42 U.S.C. § 1983.  *Wilson v. Garcia*, 471 U.S. 261, 268-69 (1985).  For civil rights suits filed in Michigan under § 1983, the statute of limitations is three years.  *See* MICH. COMP. LAWS § 600.5805(10); *Carroll v. Wilkerson*, 782 F.2d 44, 44 (6th Cir. 1986) (per curiam); *Stafford v.*

*Vaughn*, No. 97-2239, 1999 WL 96990, at *1 (6th Cir. Feb. 2, 1999).  Accrual of the claim for relief, however, is a question of federal law.  *Collyer v. Darling*, 98 F.3d 211, 220 (6th Cir. 1996); *Sevier v. Turner*, 742 F.2d 262, 272 (6th Cir. 1984).  The statute of limitations begins to run when the aggrieved party knows or has reason to know of the injury that is the basis of his action.  *Collyer*, 98 F.3d at 220.  With the exception of Claim #24, which would otherwise be subject to dismissal on multiple grounds,[2] Plaintiff's claims arose in 2014 or 2015.  Plaintiff therefore will not be not barred from pursuing his claims within the statute of limitations.

The Court therefore will look to Plaintiff's first set of factual allegations in determining which portion of the action should be considered related.  As set forth above, Claim #1 concerns Plaintiff's placement on "Potential Aggressor Status."  Claims ##2-3 also relate to his placement on potential aggressor status.  Accordingly, the Court will consider Claims ##1-3 against Defendants Heyns, Berghuis, Hoffner, Bauman, Beckwith and Winsley.  Under Rule 18, Plaintiff may join his remaining claims against those six Defendant, which include Claims ##4-5, 7 and 14-20.  Accordingly, the Court will consider below the merits of Claims ##1-5, 7, and 14-19.  Claims ##6, 9-13 and 21-24 and the remaining Defendants will be dismissed without prejudice for improper joinder.

---

[2] Plaintiff brings Claim #24 against the MDOC, which is absolutely immune from suit under the Eleventh Amendment.  *See*, *e.g.*, *McCoy v. Michigan*, 369 F. App'x 646, 653-54 (6th Cir. 2010); *Turnboe v. Stegall*, No. 00-1182, 2000 WL 1679478, at *2 (6th Cir. Nov. 1, 2000).  Furthermore, Claim #24 is time-barred.  Plaintiff asserts a violation of his Eighth Amendment rights arising from the MDOC's imposition of a smoking ban in February 2009.  Plaintiff had reason to know of the "harms" done to him at the time they occurred.  Hence, his claims accrued in 2009.  However, he did not file his complaint until 2015, well past Michigan's three-year limit.  Moreover, Michigan law no longer tolls the running of the statute of limitations when a plaintiff is incarcerated.  *See* MICH. COMP. LAWS § 600.5851(9).  Further, it is well established that ignorance of the law does not warrant equitable tolling of a statute of limitations.  *See Rose v. Dole*, 945 F.2d 1331, 1335 (6th Cir. 1991); *Jones v. Gen. Motors Corp.*, 939 F.2d 380, 385 (6th Cir. 1991); *Mason v. Dep't of Justice*, No. 01-5701, 2002 WL 1334756, at *2 (6th Cir. June 17, 2002).

II.      **Failure to State a Claim**

A complaint may be dismissed for failure to state a claim if it fails "'to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).  While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions.  *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").  The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679.  Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556).  "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (quoting FED. R. CIV. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law.  *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996).  Because § 1983 is a method for vindicating federal

rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

A.    Claims ##1-3

Plaintiff alleges that Defendants Heyns, Berghuis, Hoffner, Bauman, Beckwith and Winsley violated his due process rights by placing him on "Potential Aggressor Status" without providing notice and a hearing.   Plaintiff contends that his status as a potential aggressor has negatively impacted programming, housing and classification decisions.   Plaintiff further alleges in Claim #2 that his equal protection rights were violated when Defendants imposed a "Potential Aggressor" designation upon him without providing a valid justification, when other prisoners were provided with a valid reason for their designation as an "Aggressor," "Potential Aggressor," "Victim" or "Potential Victim."   In Claim #3, Plaintiff further claims that the "Potential Aggressor" designation violates his Eighth Amendment right against cruel and unusual punishment.

A prisoner does not have a protected liberty interest in the procedures affecting his classification and security because the resulting restraint does not impose an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 486 (1995).  Moreover, the Supreme Court has repeatedly held that a prisoner has no constitutional right to be incarcerated in a particular facility or to be held in a specific security classification. *See Moody v. Daggett*, 429 U.S. 78, 88 n.9 (1976); *Meachum v. Fano*, 427 U.S. 215, 244 (1976).  Relying on *Sandin,* the Sixth Circuit has held that a Michigan prisoner can no longer claim a liberty interest in his security classification. *See Harbin-Bey v. Rutter,* 420 F.3d 571, 577 (6th Cir. 2005); *Rimmer-Bey v. Brown,* 62 F.3d 789, 790-91 (6th Cir. 1995); *accord Mackey v. Dyke,* 111 F.3d 460 (6th Cir. 1997).  Furthermore, the Sixth Circuit has specifically held that a prisoner does not have a liberty interest arising from special security designations, such as a

-12-

"homosexual predator." *See Washington v. Wiest,* No. 97-1289, 1998 WL 466555, at * 2 (6th Cir. July 31, 1998); *O'Quinn v. Brown,* No. 92-2183, 1993 WL 80292, at * 1 (6th Cir. Mar.22, 1993). Plaintiff's designation as a "Potential Aggressor" is nothing more than a security classification used by the prison.  Plaintiff, therefore, fails to state a due process claim.

Moreover, Plaintiff does not have a federally cognizable liberty interest in participating in rehabilitative program.  Federal courts consistently have found that prisoners have no constitutionally protected liberty interest in prison vocational, rehabilitation, and educational programs based on the Fourteenth Amendment.  *See, e.g., Moody*, 429 U.S. at 88 n.9 (Due Process Clause not implicated by prisoner classification and eligibility for rehabilitative programs, even where inmate suffers "grievous loss"); *Argue v. Hofmeyer*, 80 F. App'x 427, 429 (6th Cir. 2003) (prisoners have no constitutional right to rehabilitation, education or jobs); *Canterino v. Wilson*, 869 F.2d 948, 952-54 (6th Cir. 1989) (no constitutional right to rehabilitation); *Newsom v. Norris*, 888 F.2d 371, 374 (6th Cir. 1989) (no constitutional right to prison employment); *Ivey v. Wilson*, 832 F.2d 950, 955 (6th Cir. 1987) ("[N]o prisoner has a constitutional right to a particular job or to any job"); *Antonelli v. Sheahan*, 81 F.3d 1422, 1431 (7th Cir. 1996) (participation in a rehabilitative program is a privilege that the Due Process Clause does not guarantee); *Rizzo v. Dawson*, 778 F.2d 527, 531 (9th Cir. 1985) (no constitutional right to rehabilitative services).  Because Plaintiff has no liberty interest in rehabilitative programs, his inability to participate in such programs as a result of his "Potential Aggressor" designation does not violate the Due Process Clause.

Plaintiff further alleges in Claim #2 that his equal protection rights were violated when Defendants imposed a "Potential Aggressor" designation upon him without providing a valid justification, when other prisoners were provided with a valid reason for their designation as an "Aggressor," "Potential Aggressor," "Victim" or "Potential Victim."  The Equal Protection Clause

commands that no state shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. CONST. amend. XIV, § 1. A state practice generally will not require strict scrutiny unless it interferes with a fundamental right or discriminates against a suspect class of individuals. *Mass. Bd. of Ret. v. Murgia*, 427 U.S. 307, 312 (1976). Plaintiff does not suggest that he is a member of a suspect class, and "prisoners are not considered a suspect class for purposes of equal protection litigation." *Jackson v. Jamrog,* 411 F.3d 615, 619 (6th Cir. 2005); *see also Wilson v. Yaklich,* 148 F.3d 596, 604 (6th Cir.1998). In addition, the Court previously has held that no fundamental right was implicated by Defendants' alleged conduct.

Plaintiff's claim therefore is reviewed under the rational basis standard. *Club Italia Soccer & Sports Org., Inc. v. Charter Twp. of Shelby,* 470 F.3d 286, 298 (6th Cir. 2006). "Under rational basis scrutiny, government action amounts to a constitutional violation only if it 'is so unrelated to the achievement of any combination of legitimate purposes that the court can only conclude that the government's actions were irrational.'" *Id.* (quoting *Warren v. City of Athens,* 411 F.3d 697, 710 (6th Cir. 2005)). To prove his equal protection claim, Plaintiff must demonstrate "intentional and arbitrary discrimination" by the state; that is, he must demonstrate that he "has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000).

Petitioner's vague, conclusory allegations of discrimination are not enough to state an equal protection claim. Plaintiff fails entirely to identify any similarly situated individual who was treated differently, much less that such different treatment was intentional. "It is not enough for a complaint under § 1983 to contain mere conclusory allegations of unconstitutional conduct by persons acting under color of state law. Some factual basis for such claims must be set forth in the pleadings." *Chapman v. City of Detroit*, 808 F.2d 459, 465 (6th Cir. 1986); *see also Lillard v.*

-14-

*Shelby County Bd. of Educ.*, 76 F.3d 716, 726 (6th Cir. 1996) (an equal protection claim which is not supported by factual allegations may be dismissed as being only conclusory); *Blackburn v. Fisk Univ.*, 443 F.2d 121, 123-24 (6th Cir. 1971) (same).  Consequently, Plaintiff's equal protection claim must be dismissed.

Plaintiff also fails to state an Eighth Amendment claim arising from the "Potential Aggressor" designation.  The Eighth Amendment prohibits punishments that are not only physically barbaric, but also those which are incompatible with "the evolving standards of decency that mark the progress of a maturing society," or which "involve the unnecessary and wanton infliction of pain."  *Estelle v. Gamble*, 429 U.S. 97, 102-03 (1976).  To establish an Eighth Amendment claim, the prisoner must show that he was deprived of the "minimal civilized measure of life's necessities." *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981).  Restrictions that are restrictive or even harsh, but are not cruel and unusual under contemporary standards, are not unconstitutional.  *Id.*  Thus, federal courts may not intervene to remedy conditions that are merely unpleasant or undesirable.  The Sixth Circuit has held that without a showing that basic human needs were not met, the denial of privileges associated with a prisoner's security classification cannot establish an Eighth Amendment violation. *See Evans v. Vinson*, 427 F. App'x 437, 443 (6th Cir. 2011); *Harden-Bey v. Rutter*, 524 F.3d 789, 795 (6th Cir. 2008).  While Plaintiff may be denied certain privileges as a result of his designation as a "Potential Aggressor," he does not allege or show that he was denied basic human needs and requirements.  Moreover, Plaintiff cannot bring an Eighth Amendment claim for emotional or mental damages because he does not allege a physical injury.  *See* 42 U.S.C. §1997e(e); *see also Hudson*, 503 U.S. at 5; *Harden-Bey*, 524 F.3d at 795.  As a result, Plaintiff fails to state an Eighth Amendment claim.

B.      Claims ##4-7

Claims ##4-7 of the amended complaint concern alleged violations of Plaintiff's Eighth Amendment rights.  In Claim #4, Plaintiff alleges that Defendants Beckwith, Winsley, Heyns, Berghuis and Bauman subjected him to cruel and unusual punishment when they forced him to carry his own footlockers and duffel bags when he was being transferred to another facility.  At the time, Plaintiff allegedly had serious injuries to his hand, wrist and arm as a result of an assault by Officer William Alford.  Plaintiff claims that he suffered irreparable injuries after Alford slammed a door on him in 2012.  Plaintiff contends that he suffers pain and further injury each time he is forced to carry his heavy bags for transfer.  In Claim #5 Plaintiff similarly claims that Defendants Berghuis, Hoffner, Heyns, Winsley, Beckwith and Bauman forced him to climb to a top bunk despite the injuries inflicted by Defendant Alford.  Finally, Plaintiff alleges in claim #7 that Defendant Berghuis failed to respond to his complaints or take action with regard to his placement in top bunks in violation of his Eighth Amendment rights.

Plaintiff fails to allege facts showing that Defendants Beckwith, Winsley, Heyns, Berghuis and Bauman, who include the former MDOC director, wardens and assistant wardens, were present or directly involved in his transfers or bunk assignments.  Conclusory allegations of unconstitutional conduct without specific factual allegations fail to state a claim under § 1983.  *See Ashcroft*, 556 U.S. at 678-69 (2009)*; Twombly*, 550 U.S. at 555.  To the extent Plaintiff alleges that Defendants failed to respond to his complaints or grievances, he fails to state a claim.  Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior or vicarious liability.  *Iqbal*, 556 U.S. at 676; *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691(1978); *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009).  A claimed constitutional violation must be based upon active unconstitutional behavior.  *Grinter v.*

*Knight*, 532 F.3d 567, 575-76 (6th Cir. 2008); *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002). The acts of one's subordinates are not enough, nor can supervisory liability be based upon the mere failure to act. *Grinter*, 532 F.3d at 576; *Greene*, 310 F.3d at 899; *Summers v. Leis*, 368 F.3d 881, 888 (6th Cir. 2004). Moreover, § 1983 liability may not be imposed simply because a supervisor denied an administrative grievance or failed to act based upon information contained in a grievance. *See Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999). "[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676. Plaintiff has failed to allege that Defendants Heyns, Berghuis, Hoffner and Bauman engaged in any active unconstitutional behavior. Accordingly, he fails to state a claim against them.

C.    Claims ##14-15 and 17

Plaintiff asserts in Claim #14 that Defendants Heyns, Berghuis, Hoffner and Bauman retaliated against him for filing grievances and lawsuits by transferring him to different facilities. Plaintiff claims that each of these Defendants transferred him within weeks or months after he filed a lawsuit against him or her and that there is no other legitimate explanation for the transfers. Plaintiff alleges in Claim #15 that Defendant Heyns placed him on a list of litigious prisoners who are transferred every five to six months in order to interfere the prisoner's ability to file and appeal grievances and work on pending litigation. Plaintiff further alleges in Claim #17 that in February 2015, Defendant Hoffner transferred him from the Lakeland Correctional Facility to the Alger Correctional Facility in the Upper Peninsula in retaliation for Plaintiff's filing of grievances and lawsuits.

Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). In order to set forth a First Amendment retaliation claim, a plaintiff must establish that: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Id.* Moreover, a plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

Even if Plaintiff could satisfy the first two elements of a retaliation claim with regard to Claim #14, Plaintiff's assertion of retaliatory animus is wholly conclusory. It is well recognized that "retaliation" is easy to allege and that it can seldom be demonstrated by direct evidence. *See Harbin-Bey*, 420 F.3d at 580; *Murphy v. Lane*, 833 F.2d 106, 108 (7th Cir. 1987); *Vega v. DeRobertis*, 598 F. Supp. 501, 506 (C.D. Ill. 1984), *aff'd*, 774 F.2d 1167 (7th Cir. 1985). "[A]lleging merely the ultimate fact of retaliation is insufficient." *Murphy*, 833 F.2d at 108. "[C]onclusory allegations of retaliatory motive 'unsupported by material facts will not be sufficient to state . . . a claim under § 1983.'" *Harbin-Bey*, 420 F.3d at 580 (quoting *Gutierrez v. Lynch*, 826 F.2d 1534, 1538-39 (6th Cir. 1987)); *see also Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.") Moreover, while Plaintiff contends that he was transferred within weeks or months after filing lawsuits against Defendants in state or federal courts, conclusory allegations of temporal proximity, standing alone, are not sufficient to show a retaliatory motive. See *Skinner v. Bolden*, 89 F. App'x 579, 579-80 (6th

Cir. 2004). Plaintiff merely alleges the ultimate fact of retaliation in this action. He has not presented any facts to support his conclusion that Defendants Heyns, Berghuis, Hoffner and Bauman retaliated against him because he filed lawsuits against them. Accordingly, his speculative allegations fail to state a claim.

In Claim #15, Plaintiff contends that Defendant Heyns placed him on a list of litigious prisoners who are transferred every five to six months in order to interfere the prisoner's ability to file and appeal grievances and work on pending litigation. At this stage of the proceedings, Plaintiff's allegations in Claim #15 are sufficient to warrant service on Defendant Heyns.

Plaintiff's claim of retaliation against Defendant Hoffner set forth in Claim #17 is duplicative of a claim asserted by Plaintiff in a previously filed action in this Court. *See Smith v. Weers et al.*, 1:15-cv-42 (W.D. Mich.). In an opinion and order issued on November 4, 2015, the Court dismissed the action in part and served it in part. Plaintiff's retaliation claim against Defendant Hoffner was served and remains pending in that case. Because Claim #17 is duplicative of the retaliation claim against Hoffner pending in a previously filed case, it will be dismissed from this action.

D.   Claim #16

Claim #16 concerns Plaintiff's inability to participate in the "Dog Program." Plaintiff alleges that Defendants Hoffner, Beckwith and Bauman denied him participation in the program on the ground that he was convicted of criminal sexual conduct. Plaintiff claims that these Defendants denied him admission while allowing other prisoners with more serious violent offenses to participate in the program in violation of his equal protection rights. Plaintiff further alleges that

-19-

Defendants Hoffner and Beckwith told him that he was denied entry to the program "because [he] filed lawsuits against their fellow staff members." (Amend. Compl., ECF No. 32, PageID.129.)

As previously discussed, federal courts consistently have found that prisoners have no constitutionally protected liberty interest in prison rehabilitation programs. *See, e.g., Moody*, 429 U.S. at 88 n.9; *Argue*, 80 F. App'x at 429; *Canterino*, 869 F.2d at 952-54. Because Plaintiff has no liberty interest in rehabilitative programs, Defendants' conduct did not violate his due process rights. Likewise, Defendants' denial of Plaintiff's request to participate in the program is not the type of extreme deprivation that would implicate the Eighth Amendment. *Rhodes*, 452 U.S. at 347; *see also Wilson*, 148 F.3d at 600-01.

Plaintiff also alleges that Defendants denied him equal protection when they rejected him from the program on the ground that he was convicted of criminal sexual conduct when other prisoners with more serious violent offenses were allowed to participate. Applying the rational basis standard, Plaintiff fails to allege sufficient facts to support a claim of intentional discrimination by either direct or indirect evidence. *See Davis v. Prison Health Servs.*, 679 F.3d 433, 440 (6th Cir. 2012) (discussing the distinction between direct and indirect methods of proving discrimination). First, Plaintiff alleges no facts constituting direct evidence of discriminatory motive or purpose. *See Umani v. Mich. Dep't of Corr.*, 432 F. App'x 453, 458 (6th Cir. 2011) (citing *Johnson v. Kroger Co.*, 319 F.3d 858, 865 (6th Cir. 2003)); *see also Davis*, 679 F.3d at 440. Second, Plaintiff fails to allege a *prima facie* claim under the indirect, burden-shifting framework of *McDonnell Douglas v. Green*, 411 U.S. 792 (1973), because he fails to allege that the prisoners participating in the Dog Program were similarly situated in all relevant respects. *See Umani*, 432 F. App'x at 458. To be a similarly-situated person member of another class, "the comparative [prisoner] 'must have dealt

-20-

with the same [decisionmaker], have been subject to the same standards, and have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or their employer's treatment of them for it.'"   *Umani*, 432 F. App'x at 460 (quoting *Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 352 (6th Cir.1998).  Here, Plaintiff has failed to identify the prisoners who were permitted to participate in the Dog Program, let alone that they were similarly situated in all relevant respects.  Plaintiff therefore fails to state an equal protection claim.

Plaintiff further alleges that Defendants Hoffner and Beckwith told him that he was denied entry to the program "because [he] filed lawsuits against their fellow staff members." (Amend. Compl., ECF No. 32, PageID.129.)  At this stage of the proceedings, Plaintiff's allegations in Claim #16 are sufficient to state a First Amendment retaliation claim against Defendants Hoffner and Beckwith.  Plaintiff does not allege any retaliatory conduct on the part of Defendant Bauman; consequently, the Court will dismiss Claim #16 with regard to Defendant Bauman.[3]

E.     Claims ##18 and 20

In Claim #18, Plaintiff contends that Defendants Hoffner and Bauman have denied him employment in the prison library in violation of his Fourteenth Amendment equal protection rights.  Plaintiff specifically alleges that his equal protection rights were violated "where OTHER PRISONERS ARE GIVEN PROPER REASONS FOR THERE [SIC] BEING DENIED, AND THE REASONS GIVEN TO PLAINTIFF ARE IN FACT FALSE . . . ."  (Am. Compl., PageID.133.) Plaintiff further alleges in Claim #20, that Defendant Heyns violated his Fourteenth Amendment

---

[3]Plaintiff raised his Fourteenth Amendment due process and equal protection claims, and his Eighth Amendment claim against Defendant Beckwith in *Smith v. Weers*, 1:15-cv-42 (W.D. Mich.).  Those claims were dismissed by the Court on November 4, 2015.  Plaintiff, however, did not raise a related retaliation claim in that action.

equal protection and due process rights by denying his participation in the legal writer training program based upon false information.

Plaintiff fails to state a due process claim because, as discussed above, prisoners have no constitutionally protected liberty interest in prison jobs or vocational programs. *See Ivey*, 832 F.2d at 955 ("[N]o prisoner has a constitutional right to a particular job or to any job"); *Argue*, 80 F. App'x at 429 (prisoners have no constitutional right to rehabilitation, education or jobs); *Newsom*, 888 F.2d at 374 (no constitutional right to prison employment).

Moreover, Plaintiff's allegations of discriminatory treatment are wholly conclusory. Plaintiff merely argues in Claim #18 that Defendants denied him employment in law library based upon false information. He provides no specific factual allegations to support his contention that he was denied a job in law library while similarly situated prisoners were allowed to work there. Moreover, with regard to Claim #20, Plaintiff utterly fails to allege how he was treated differently from other similarly situated prisoners. Conclusory allegations of unconstitutional conduct without specific factual allegations fail to state a claim under § 1983. *See Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 555. Consequently, Plaintiff also fails to state an equal protection claim with regard to Claims ##18 and 20.

F.     Claim #19

Plaintiff asserts in Claim #19 that on December 11, 2014, Defendant Winsley threatened to transfer him to the Upper Peninsula, which would prevent Plaintiff's wedding scheduled for February 2014, if Plaintiff did not drop his lawsuit against Officer Alford. In addition, Plaintiff claims that Winsley falsely accused him of using the telephone while he was serving sanctions on a previous misconduct, which resulted in Plaintiff being placed on telephone restriction.

-22-

Plaintiff contends that Winsley's conduct violation his First, Eighth and Fourteenth Amendment rights.  Plaintiff's claims against Winsley were raised in his previous action and remain pending before the Court.  Because his claims against Winsley in this action are duplicative, they will be dismissed without prejudice.

## Conclusion

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Claims ##6, 9-13 and 21-24 will be dismissed without prejudice for misjoinder.  In addition Claims ##17 and 19 will be dismissed without prejudice as duplicative of claims previously raised in *Smith v. Weers*, 1:15-cv-42 (W.D. Mich.).

Claims ##1-7, 14, 18 and 20 will be dismissed for failure to state a claim pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c).  The Court will serve the retaliation claims set forth in Claims ##15 and 16 against Defendants Heyns, Hoffner and Beckwith. The complaint will be dismissed as to the remaining Defendants.

An Order consistent with this Opinion will be entered.


Dated:  February 17, 2016             /s/ Janet T. Neff
                                      Janet T. Neff
                                      United States District Judge

-23-